IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Stella Croxon, | NO. C 03-01144 JW |
|       Plaintiff,<br>  v.<br>Enterprise America, Inc., et al,<br>      Defendants.<br>_____/ | **ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT WITHOUT PREJUDICE** |

## **I.  INTRODUCTION**

Stella Croxon ("Plaintiff") brought this action on March 17, 2003 against Enterprise America, Inc. ("Enterprise America"), Consumer Credit Management Services ("CCMS"), Randall Richards ("Richards") and Johnnie Rogers ("Rogers"), alleging, *inter alia*, violations of the Fair Credit Report Organization Act, 15 U.S.C. §§ 1679, *et seq.* On December 1, 2003, the Court entered Default Judgment against Enterprise America, Richards and Rogers.

Presently before the Court is Defendant Johnnie Rogers' Motion to Set Aside Default Judgment. (hereafter, "Motion," Docket Item No. 31.) The Court conducted a hearing on November 17, 2008. Based on the papers submitted to date and oral argument, the Court DENIES Defendant's Motion to Set Aside Default Judgment without prejudice.

## II.  BACKGROUND

**A.  Factual Allegations**

In a Complaint filed on March 17, 2003, Plaintiff alleged:

In May 2002, Plaintiff sought credit counseling and management services for a period of time during which she expected to be recovering from surgery.[1] (Complaint ¶ 13, Docket Item No. 1.) Enterprise America and CCMS are related corporations that provided such services. Rogers, a resident of Ohio,[2] contacted Plaintiff on behalf of Enterprise America. (Id. ¶ 14.) Through a series of telephone conversations, emails and faxes, Rogers told Plaintiff that her credit was being damaged by her high debt balances and assisted Plaintiff in signing up for the credit management services to be provided by Enterprise America and CCMS. (Id. ¶¶ 14-16.)

After Plaintiff's surgery and some investigation, Plaintiff discovered that Enterprise America and CCMS had failed to make agreed-upon payments on behalf of Plaintiff to several of her creditors. (Complaint ¶¶ 18-23.) This failure resulted in damage to Plaintiff's credit score, late fees and interest charges. (Id. ¶ 24.)

On the basis of the allegations outlined above, Plaintiff asserted six causes of action against all Defendants, including Rogers as an individual.[3]

**B.  Procedural History**

On April 4, 2003, Plaintiff attempted to serve Defendants Enterprise America, Richards and Rogers by mailing a copy of the Summons and Complaint to each of them at Enterprise America's

---

[1] A more complete factual and procedural background can be found in the Court's December 1, 2003 Order Granting Default Judgment. (hereafter, "Default Judgment Order," Docket Item No. 25.)

[2] (See Declaration of Johnnie Rogers ¶ 2, hereafter, "Rogers Decl.," Docket Item No. 31.)

[3] Violations of (1) the Federal Credit Repair Organization Act, 15 U.S.C. §§ 1679, *et seq.* (2) the California Check Sellers, Bill Payers and Proraters Law, Cal. Fin. Code §§ 12000, *et seq.*; (3) the California Credit Services Act of 1984, Cal. Civ. Code §§ 1789.13, *et seq.*; (4) the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770, *et seq.*; (5) the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (6) California's Fraud Statute, Cal. Civ. Code § 3294.

address. (Declaration of Luis Meza in Support of Motion for Default ¶¶ 2-4, Docket Item No. 6.) Deborah Richards, Defendant Richards' wife, signed the return receipt for the delivery of the Summons and Complaint to Johnnie Rogers. (See Docket Item No. 7.)

On June 13, 2003, Plaintiff filed a motion for entry of default and submitted declarations indicating that service of process had been effected pursuant to Fed. R. Civ. P. 4. (See Docket Item Nos. 5-9.) On July 24, 2003, the Clerk of Court entered default with respect to Defendants Enterprise America, Richards and Rogers pursuant to Fed. R. Civ. P. 55(a). (See Docket Item No. 12.) The Clerk declined to enter default with respect to CCMS, apparently because CCMS was never served in this action. (See Docket Item No. 13.) On October 20, 2003, Plaintiff moved for default judgment. (See Docket Item No. 19.) On December 1, 2003, the Court entered Default Judgment against Enterprise America, Randall Richards and Rogers in a total amount of $176,123.33.[4] (Order Granting Default Judgment at 7, Docket Item No. 25.)

Rogers contends that on April 10, 2008, she first learned of the existence of Croxon's action when she was notified of the filing a foreign judgment in her home state of Ohio. (Rogers Decl. ¶ 6.) On August 21, 2008, Rogers filed a Motion to Set Aside the Court's Default Judgment Order under Fed. R. Civ. P. 60(b)(4). (Motion at 3.)

Presently before the Court is Rogers' Motion to Set Aside Default Judgment.

### III. STANDARDS

Under Fed. R. Civ. P. 60(b)(4), a court "may relieve a party or its legal representative from a final judgment" if "the judgment is void." A judgment is void if it was entered by a court lacking jurisdiction. See Pac. Atlantic Trading Co., Inc. v. The M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985). "A motion under rule 60(b) must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). However, when a motion under Rule 60(b)(4) is premised on a lack of authority by the issuing court, the reasonable time requirement is effectively inapplicable. See Yanow v. Weyerhaeuser S.S. Co., 274 F.2d 274, 278 (9th Cir. 1959); Walker & Zanger Ltd. v. Stone Design

---

[4] The Court did not enter default judgment against CCMS. (See Docket Item No. 19.)

3

S.A., 4 F. Supp. 2d 931, 934 (C.D. Cal. 1997).  Although a motion under Rule 60(b) is usually within the discretion of a district court, refusing to set aside a default judgment under Rule 60(b)(4) where the court lacked jurisdiction is "a *per se* abuse of discretion."  Bally Export Co. v. Balicar, Ltd., 804 F.2d 398, 401 (7th Cir. 1986).

### IV.  DISCUSSION

Rogers moves to set aside the Court's December 1, 2003 Default Judgment on the grounds that the Court lacked personal jurisdiction over her and that she never received proper service of process.  (Motion at 4.)

**A.     Personal Jurisdiction**

Rogers contends that the Court lacked personal jurisdiction at the time that it entered Default Judgment against her because her contact with Plaintiff in California was only as an agent of Enterprise America.  Thus, according to Rogers, she did not purposefully avail herself of the privileges of conducting activity in California.  (Motion at 8-9.)

The plaintiff in an action bears the burden of establishing that the court has personal jurisdiction over the defendant.  Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements, 328 F.3d 1122, 1129 (9th Cir. 2003).  The Ninth Circuit has established a two-prong test to determine the propriety of asserting personal jurisdiction.  First, the relevant state long-arm statute must permit exercise of jurisdiction, and second, exercise of jurisdiction must be consistent with the demands of due process.  Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1207 (9th Cir. 1980).  California's long-arm statute, Cal. Code Civil Procedure 410.10, permits the exercise of jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States."  Rocke v. Canadian Automobile Sport Club, 660 F.2d 395, 398 (9th Cir. 1981).  Accordingly, the exercise of jurisdiction must comport with constitutional due process.

Under International Shoe Co. v. Washington, due process requires that non-resident defendants have minimum contacts with the forum state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  326 U.S. 310, 316 (1945).  This requirement may be satisfied in one of two ways.  If the defendant has "substantial" or "continuous

4

1  and systematic" contacts with the forum state, general jurisdiction may be proper, even if the cause
2  of action is unrelated to the defendant's forum activities. Data Disc, Inc. v. Systems Technology
3  Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). In the absence of such continuous or
4  substantial activity, specific jurisdiction may be obtained if there is a relationship between the
5  quality of the defendant's forum contacts and the cause of action. Hirsch v. Blue Cross, Blue Shield
6  of Kansas City, 800 F.2d 1474, 1477 (9th Cir. 1986).

7  The Ninth Circuit has set forth a three-part analysis to determine whether limited personal
8  jurisdiction may be obtained for a claim arising out of a defendant's forum-related activities. First,
9  the non-resident defendant must perform some act by which he purposefully avails himself of the
10 privilege of conducting activities in the forum, thereby invoking the benefits and protections of its
11 laws. Second, the claim must be one that arises out of defendant's forum-related activities. Third,
12 exercise of jurisdiction must be reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d
13 797, 802 (9th Cir. 2004).

14 The Court considers whether either general or specific personal jurisdiction may be
15 established over Rogers.

### 1.    General Personal Jurisdiction

17 Plaintiff does not contend that Rogers had the systematic and continuous contacts with
18 California necessary to establish general jurisdiction. Nor does Rogers discuss the issue in her
19 papers. Given that there are no allegations or evidence that Rogers' contacts with California were
20 sufficient to subject her to general personal jurisdiction, the Court finds that it did not have general
21 jurisdiction over Rogers at the time of the Default Judgment.

### 2.    Specific Personal Jurisdiction

23 The parties' dispute whether Rogers is subject to specific personal jurisdiction in California.
24 (Motion at 7; Opposition to Defendant Johnnie Rogers' Motion to Vacate and Set Aside Default and
25 Default Judgment at 4, hereafter, "Opposition," Docket Item No. 32.) Although Rogers does not

1  contest the sufficiency of her contacts with California,[5] she contends that the fiduciary shield

2  doctrine vitiates her California-directed conduct for purposes of establishing personal jurisdiction.

3  (Motion at 8.)

4  Under the fiduciary shield doctrine, "a person's mere association with a corporation that

5  causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction

6  over the person." Davis v. Metro Productions, Inc., 885 F.2d 515, 520 (9th Cir. 1989). "The mere

7  fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident

8  officers, directors, agents, and employees are suable locally as well." Martin Ray Winery v.

9  Graham, No. C 06-3618, 2007 WL 963252, *5 (N.D. Cal. Mar. 29, 2007). On the other hand, status

10 as an employee does not necessarily insulate an out-of-state individual from personal jurisdiction; an

11 employee's conduct must be assessed individually. Id. (citing Calder v. Jones, 465 U.S. 783, 790

12 (1984)). An employee, officer or director may be subject to personal jurisdiction based on their

13 actions performed on behalf of an employer where the individual was a "primary participant" with

14 "control of, and direct participation in the alleged activities." Id. Both control and direct

15 participation are necessary to establish an exception to the fiduciary shield doctrine. See id. at *5-6.

16 In this case, when the Court granted Default Judgment, the Court summarily found that it had

17 "personal jurisdiction over Defendants because they purposefully engaged in business activities in

18 California and have consequently availed themselves of the benefits of conducting business in this

19 State." (Order Granting Default Judgment at 6.) However, the Court did not consider at that time

20 whether personal jurisdiction over Defendant Rogers was improper on the ground that her California

---

[5] Rogers concedes that she directly participated in the conduct that gave rise to Plaintiff's cause of action. (Motion at 5-6.) For her part, Rogers contacted Plaintiff on behalf of Enterprise America and worked with Plaintiff through the process of signing up for Enterprise America and CCMS's services. (Default Judgment Order at 2.) As part of her interaction with Plaintiff, Rogers, through a series of phone calls, emails and faxes, answered questions regarding the specific terms of the services Plaintiff would receive and told Plaintiff to refrain from contacting her creditors. (Id.) Rogers' instruction that Plaintiff refrain from contacting her creditors is one of the reasons Plaintiff did not discover that Enterprise America and CCMS were not making payments to Plaintiff's creditors until after her credit had been damaged. (See id. at 2-3.) Thus, the Court finds that Rogers directly participated in the conduct giving rise to Plaintiff's action.

contacts were undertaken solely as the agent of Enterprise America. The Court now considers whether personal jurisdiction over Rogers was improper for that reason.

Rogers proffers evidence that she was an independent contractor for Enterprise America. (Rogers Decl. ¶ 3; Declaration of Randall Richards ¶ 7, Docket Item No. 31.) Although Rogers was not an employee, the fiduciary shield doctrine may apply if she acted on behalf of Enterprise America as its agent. See Martin Ray Winery, 2007 WL 963252, at *5. Rogers states in her declaration that she was acting on behalf of Enterprise America when communicating with Plaintiff in California. (Rogers Decl. ¶ 3.) Plaintiff's own evidence corroborates this statement, in that Plaintiff produces an email from Rogers in which the signature line identifies Rogers as a "Senior Consultant" for Enterprise America.[6] Plaintiff also produces two fax messages from Rogers that contain Enterprise America letterhead. (Croxon Decl., Exs. 2, 3.) Further, Plaintiff concedes that Rogers held herself out as an agent of Enterprise America at the time of their communications. (Opposition at 2.)

Even though Rogers had some form of agency relationship with Enterprise America and CCMS, she may still be subject to personal jurisdiction on an individual basis if she had control over and direct participation in the allegedly unlawful activities. See Martin Ray Winery, 2007 WL 963252, at *5-6. Plaintiff's Complaint alleges that Rogers is "an owner, president, chief executive officer, officer, director, principal, partner, salesperson, employee and/or agent of [Defendant Enterprise America] and as such[,] she has at all relevant times directed and controlled the activities of Enterprise America." (Complaint ¶ 10.) Rogers, however, provides a declaration stating she "had no control whatsoever" over the relationship between Plaintiff and the corporate Defendants after initially facilitating Plaintiff's debt collection agreement with those Defendants. (Rogers Decl. ¶ 4 n.1.) Other than declaration testimony with respect to her independent contractor status, Rogers does not provide additional evidence concerning her relationship with Enterprise America. (See id. ¶ 3.)

---

[6] (Declaration of Stella Croxon in Opposition to Defendant's Motion to Vacate and Set Aside Default and Default Judgment Ex. 1, hereafter, "Croxon Decl.," Docket Item No. 32.)

1  "Discovery may be appropriately granted where pertinent facts bearing on the question of
2  jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."
3  Bochetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting Data Disc, Inc., 557 F.2d at 1285
4  n.1). In this case, a more satisfactory showing of the facts regarding personal jurisdiction over
5  Rogers is necessary because the parties do not provide sufficient evidence to determine the extent of
6  Rogers' control over the conduct of Enterprise America and CCMS. Thus, the Court finds that
7  jurisdictional discovery is appropriate.

8  Accordingly, the Court DENIES without prejudice Rogers' Motion to Set Aside Default
9  Judgment with respect to personal jurisdiction, to be renewed after jurisdictional discovery.

**B.  Service of Process**

11  Rogers contends that the Default Judgment against her should be set aside because the
12  service of process was defective. (Motion at 13.)

13  Under Cal. Code Civ. Proc. § 415.40, "[a] summons may be served on a person outside this
14  state . . . by sending a copy of the summons and of the complaint to the person to be served by
15  first-class mail, postage prepaid, requiring a return receipt." Under § 417.20, "if service is made by
16  mail pursuant to [§ 415.40], proof of service shall include evidence satisfactory to the court
17  establishing actual delivery to the person to be served, by a signed return receipt or other evidence."
18  This evidentiary requirement is satisfied if the return receipt is signed by the person to be served or
19  someone authorized to receive mail on their behalf. Taylor-Rush v. Multitech Corp., 217 Cal. App.
20  3d 103, 111 (1990).

21  Here, Deborah Richards, Defendant Richards' wife, signed the return receipt for Rogers'
22  Summons and Complaint. (See Docket Item No. 7.) Deborah Richards and Defendant Rogers
23  provide declarations stating that Deborah Richards was not authorized to accept mail on Rogers'
24  behalf. (Supplemental Declaration of Deborah Richards ¶ 3, Docket Item No. 34; Supplemental
25  Declaration of Johnnie Rogers ¶ 2, Docket Item No. 34.) Deborah Richards also states in her
26  declaration that she received the Summons and Complaint at the post office box that Defendant
27  Richards and Deborah Richards used for personal and business mail. (Supplemental Declaration of

8

Deborah Richards ¶ 3.) That post office box, however, is the address Rogers used when acting on behalf of Enterprise America. (See Croxon Decl., Exs. 2, 3.) In light of this evidence, the Court finds that neither party has made a sufficient showing to establish whether service was proper or improper; Rogers and Deborah Richards' declarations that Deborah Richards was not authorized to receive mail on Rogers' behalf is controverted by the fact that Rogers used the post office box in connection with her duties on behalf of Enterprise America.

Accordingly, the Court DENIES without prejudice Rogers' Motion to Set Aside Default Judgment with respect to improper service of process, to be renewed after additional discovery.

## V.  CONCLUSION

The Court DENIES Rogers' Motion to Vacate and Set Aside Default Judgment without prejudice to renewing her motion after both parties have had an opportunity to conduct discovery concerning the Court's personal jurisdiction over Defendant Rogers. The parties shall complete jurisdictional discovery no later than **March 2, 2009**. Defendant Rogers, if she so chooses, may then notice her Renewed Motion to Set Aside Default Judgment and submit additional evidence for the Court's evaluation.

Dated:  December 18, 2008

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Carole Johnston carole@johnstonlegal.com
Robert Mayer Moss rmmosslaw@hotmail.com
Sharon L. Kinsey cmcclele@consumeradvocate.net

Barak Isaacs[7]
Law Offices of Barak Isaacs
16133 Ventura Blvd., Suite 902
Encino, CA 91436

**Dated:  December 18, 2008**                              **Richard W. Wieking, Clerk**

                                                                         **By:      /s/ JW Chambers
                                                                                    Elizabeth Garcia
                                                                                    Courtroom Deputy**

---

[7] Pursuant to the Local Rules, counsel shall register for E-Filing.